UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



ALEXANDER W. BURKARD,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**

1: 17-CV-00290 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Alexander Burkard ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted in part, the Commissioner's motion (Dkt. 12) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed an application for DIB on December 16, 2013, and an application for SSI on December 20, 2013. (Dkt. 7 at 20).[1] In both applications, Plaintiff alleged disability beginning on December 1, 2012. (*Id.*). Plaintiff's applications were initially denied on April 11, 2014. (*Id.*). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani on April 18, 2016. (*Id.* at 35-64). On May 23, 2016, the ALJ issued an unfavorable decision. (*Id.* at 17-29). The Appeals Council denied Plaintiff's request for review on February 3, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's

residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2013. (Dkt. 7 at 22). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 1, 2012, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of bipolar disorder and panic disorder. (*Id.*). At step three, the ALJ found that Plaintiff did

- 4 -

not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (*Id.* at 23). The ALJ particularly considered the criteria of listings 12.04, 12.06, and 12.09 in reaching his conclusion. (*Id.* at 23-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform work at "all exertional levels," but with certain non-exertional limitations. (*Id.* at 24). The ALJ determined that Plaintiff could:

> understand, remember and carry out simple instructions and tasks with work limited to a low stress work environment defined as no supervisory duties, no independent decision making and minimal changes in work routine and processes. Further, the claimant shall have only occasional interaction with supervisors and no or only incidental interaction with co-workers and the general public.

(*Id.*).

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as the opinion evidence provided. (*Id.*). Among the materials considered was the treating source evidence provided by Dr. Christopher Martin, Plaintiff's treating physician. (*Id.* at 26). Dr. Martin is a psychiatric specialist with Suburban Psychiatric Associates LLP, and first saw Plaintiff on June 30, 2006. (*Id.* at 383). Dr. Martin's treatment notes indicate that he saw Plaintiff frequently between 2006 and 2016. (*Id.* at 321-48, 358-524, 536-40, 592-628). Dr. Martin also completed a Mental Residual Functional Capacity Questionnaire, in which he indicated that, among other things, Plaintiff suffered from difficulty concentrating, bipolar syndrome with a history of episodic periods, and paranoid thinking. (*Id.* at 630-34). Dr. Martin opined that Plaintiff

would be "poor" in his ability to: "[d]eal with the public"; "[d]eal with work stress"; "[m]aintain attention/concentration"; "[u]nderstand, remember and carry out complex job instructions"; "[b]ehave in an emotionally stable manner"; [r]elate predictably in social situations"; and "[d]emonstrate reliability". (*Id.* at 632-33).

In determining Plaintiff's RFC, the ALJ afforded the opinion of Dr. Martin "little weight." (*Id.* at 26). The ALJ opined that Dr. Martin's opinion appeared "largely based on self-reported activity limitations which are inconsistent with all activities actually performed as well as the opinions of other examiners and reviewers." (*Id.*). Specifically, the ALJ determined that Dr. Martin's diagnosis did not seem consistent with trips Plaintiff had taken to out-of-state "UFC" events, to a casino, and to a soccer game in South Carolina. (*Id.*).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of motor vehicle assembler, machine packager, and warehouse worker. (*Id.* at 28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The Treating Physician Rule

The treating physician rule[2] provides that a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). An ALJ can refuse to allot controlling weight to a treating physician's medical opinion, but in doing so he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* An ALJ's failure to explicitly consider these factors in assigning weight to a treating physician's opinion can constitute grounds for a remand. *See Clark v. Astrue*, No. 08 Civ. 10389 (LBS), 2010 WL 3036489, at *4 (S.D.N.Y. Aug. 4, 2010) (opining that an ALJ "committed legal error" when he "fail[ed] to explicitly consider all the required factors [articulated in *Halloran*] when evaluating [the treating physician's] opinion").

---

[2] The treating physician rule applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. The current version of the SSA's regulations eliminates the treating physician rule, but those regulations apply to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. As a result, the treating physician rule applies to Plaintiff's claim, which was filed in December 2013.

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

"In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). Thus, an ALJ's subjective impression regarding the validity of a claimant's impairments does not constitute "good reasons" to disregard a treating physician's opinion. *See Clark*, 2010 WL 3036489, at *5 (opining that ALJ's subjective impression of claimant's impairments was not a "good reason" to disregard treating source's opinion).

Additionally, "a reason . . . that relies on a mischaracterization of the record cannot be a good reason [for disregarding a treating source's opinion]." *Wilson v. Colvin*, 213 F.

- 8 -

Supp. 3d 478, 485 (W.D.N.Y. 2016) (internal quotation marks omitted). In *Wilson*, the court opined that the ALJ had not provided "good reasons" for dismissing the treating physician's opinion when he mischaracterized evidence regarding the claimant's enjoyment of "mentally stimulating puzzles," which the ALJ thought "established that [the claimant] could not have 'significantly impaired concentration and persistence[.]'" *See id.* at 484-85 ("While [the plaintiff] did testify that he used Sudoku or word puzzles to try to get his mind off his pain, he qualified this by stating that he could only focus on doing a puzzle about 10 to 15 minutes before he became frustrated by his pain." (internal citation omitted)).

Here, the Court concludes that the ALJ failed to provide "good reasons" for his decision to assign "little weight" to the opinion of Plaintiff's treating physician, Dr. Martin. Because this failure constitutes legal error, this case must be remanded for further development of the record. The ALJ afforded Dr. Martin's medical opinion "little weight" in his overall RFC determination. (Dkt. 7 at 26). In doing so, the ALJ did little more than indicate that he determined the opinion to be inconsistent with other evidence in the record. (*See id.*). Contrary to the regulations, the ALJ did not assess the five factors that *must* be considered in determining how much weight to be given to a treating physician's opinion. *See Halloran*, 362 F.3d at 32 ("An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give the opinion." (internal quotation marks omitted)); *see also* 20 C.F.R. § 404.1527(c) (listing the relevant factors for an ALJ to consider in assigning weight to a treating physician's opinion).

Specifically, in determining what weight to assign to the treating source opinion, the ALJ erred in not discussing that Dr. Martin had treated Plaintiff for approximately a decade, and in failing to explicitly consider the fact that Dr. Martin is a psychiatric specialist. *See Halloran*, 362 F.3d at 32 (noting "frequency of examination and length, nature and extent of the treatment relationship" and "whether the opinion is from a specialist" as two factors that an ALJ must consider in assigning weight to treating physician's opinion). At most, the ALJ addressed one of the five factors—"consistency of the opinion with the record as a whole"—in his decision. (*See* Dkt. 7 at 26 ("I give Dr. Martin's opinion little weigh as it appears it is largely based on self-reported activity limitations which are inconsistent with all activities actually performed as well as the opinions of other examiners and reviewers.")). The ALJ's failure "to explicitly consider all the required factors when evaluating [Dr. Martin's] opinion" constitutes legal error and warrants a remand of Plaintiff's case. *See Clark*, 2010 WL 3036489, at *4 (opining that an ALJ's failure to consider all of the *Halloran* factors in assessing a treating physician's opinion constituted legal error).

In addition to failing to discuss all of the required factors, remand is required because, in articulating his reasons for discounting Dr. Martin's opinion, the ALJ failed to provide "good reasons" for his determination. *See Halloran*, 362 F.3d at 33 (noting that the Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a treating [physician's] opinion"). In his decision, the ALJ noted that Plaintiff had taken trips to a "UFC" event in Canada, a casino, and a soccer match in South Carolina. (Dkt. 7 at 26). The ALJ opined that these

- 10 -

activities were "inconsistent" with Dr. Martin's opinion regarding Plaintiff's social anxiety and inability to interact with the public. (*Id.*). However, "[i]n analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Rosa*, 168 F.3d at 79 (quoting *McBrayer*, 712 F.2d at 799). The ALJ's personal judgment that Plaintiff's trips are inconsistent with Dr. Martin's diagnosis cannot, on its own, provide good reason for discounting the treating source opinion. *See Clark*, 2010 WL 3036489, at *5 (determining that an ALJ's subjective impressions of the validity of a claimant's impairments did not constitute "good reason" to disregard a treating physician's opinion).

Moreover, the ALJ did not provide "good reasons" for discounting Dr. Martin's opinion because his determination is based on a mischaracterization of the evidence. *See Wilson*, 213 F. Supp. 3d at 485 ("[M]ischaracterization of the record cannot be a 'good reason' [for disregarding a treating source's opinion]."). As in *Wilson*, where the ALJ discussed the plaintiff's enjoyment of "mentally stimulating puzzles" without noting the plaintiff's limitations with respect to those puzzles, the ALJ in this case described Plaintiff's various trips as "inconsistent" with the opinion of Dr. Martin while failing to note that Dr. Martin's treatment notes discussed some of those trips. *See Wilson*, 213 F. Supp. 3d at 484; *see also* Dkt. 7 at 625, 627 (treatment notes stating Plaintiff made trips to Orlando and Boston for "UFC" events). Despite not discussing all of the specific trips that the ALJ references in his decision, Dr. Martin's notes reflect an awareness that Plaintiff went on such trips. (*See* Dkt. 7 at 625, 627). For example, Dr. Martin referenced Plaintiff's trip to Orlando to see a "UFC" fight. (*Id.* at 625). Thus, Dr. Martin took into consideration

- 11 -

the fact that Plaintiff took part in social trips in reaching his conclusion that Plaintiff suffered from social impairments. *See Wilson*, 213 F. Supp. 3d at 488 (opining that ALJ's assessment that the plaintiff's activities undermined treating physician's opinion was incorrect because treating physician knew about such activities, and therefore "a reasonable reading of [the treating physician's] opinion [was] that she took these activities into account and still [made her functional assessment]").

The ALJ's failure to note, in concluding that Dr. Martin's opinion was inconsistent with Plaintiff's actions, that Dr. Martin considered Plaintiff's social activities in making his assessment constitutes a mischaracterization of the evidence. *Cf. id.* at 484 (noting that ALJ mischaracterized record evidence when he referenced the plaintiff's enjoyment of "mentally stimulating puzzles" without also noting his limitations in engaging in such activities). The ALJ mischaracterized Dr. Martin's opinion and then, on that basis, assigned it little weight. Therefore, the ALJ did not satisfy the "good reasons" rule and remand is required for proper consideration of the treating physician's opinion.

### III. <u>Plaintiff's Claims of Obesity Impairment[3]</u>

Obesity is medically equivalent to a listed disability under Social Security if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *See Browne v. Comm'r of Social Sec.*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015) ("Obesity

---

[3] Although the Court concludes that remand is necessary for the reasons stated above, the Court finds that discussion of Plaintiff's second argument is appropriate in order to provide further clarification on remand.

may be considered 'severe'—and thus medically equal to a listed disability—if 'alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.'" (quoting SSR 02-1p, 67 Fed. Reg. 57859-02, 57861–62 (Sept. 12, 2002))); *see also Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) ("Where the record contains evidence of limiting effects from a claimant's obesity, the ALJ must consider the impact of [the plaintiff's] obesity together with [the plaintiff's] related impairments." (citing *Sotack v. Astrue*, No. 07-CV-0382, 2009 WL 3734869, at *5 (W.D.N.Y. Nov. 4, 2009))). For obesity to count as a "severe" impairment, it "must be more than a slight abnormality, and have more than a minimal effect on a claimant's ability to perform basic work activities." *Thompson v. Astrue*, No. 12-CV-111S, 2013 WL 265239, at *3 (W.D.N.Y. Jan. 23, 2013) (citing SSR 02-1p at 57862).

Even so, an ALJ's obligation to discuss a claimant's obesity as an impairment diminishes "where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." *Farnham*, 832 F. Supp. 2d at 261. Establishing that a claimant is obese is not enough to require that the ALJ consider whether obesity is a "severe" impairment. *Id.* In *Farnham*, despite there being evidence establishing that the plaintiff was obese, the court determined that the ALJ had no duty to evaluate the plaintiff's obesity as a "severe" impairment because the record was "devoid of any evidence that [the plaintiff's] treating or examining sources considered [his] obesity a significant factor relative to [the plaintiff's] ability to perform basic work activities." *Id.* Similarly, in

*Thompson*, because "the record [was] devoid of any suggestion that [the plaintiff's] weight negatively impacted her ability to work . . . the ALJ had no duty to discuss [the plaintiff's] obesity as an impairment or a contributing factor." 2013 WL 265239, at *3.

Here, Plaintiff did not allege that his obesity was an impairment, and the record is devoid of any medical evidence establishing that Plaintiff's obesity negatively affected his ability to perform work activities. As in *Farnham*, Plaintiff points to multiple areas in the record that establish his obesity. (Dkt. 10-1 at 27). However, at no point does the record establish that Plaintiff's obesity was "a significant factor relative to [his] ability to perform basis work acitivities[,]" *Farnham*, 832 F. Supp. 2d at 261, or that it "negatively impacted [his] ability to work," *Thompson*, 2013 WL 265239, at *4. In light of this absence of evidence in the record, the ALJ was under no duty to consider Plaintiff's obesity as an impairment. *See Farnham*, 832 F. Supp. 2d at 261 (determining that the ALJ had no duty to discuss the plaintiff's obesity where the record was "devoid of any evidence that [the plaintiff's] treating or examining sources considered the plaintiff's obesity a significant factor relative to [the plaintiff's] ability to perform basic work activities"); *see also Thompson*, 2013 WL 265239, at *4 (opining that ALJ had no duty to discuss the plaintiff's obesity as an impairment where "neither her treating sources nor the examining sources attribute[d] any symptoms, limitations, or exacerbation of other impairments to [the plaintiff's] weight").

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is denied. Plaintiff's motion for judgment on the pleadings (Dkt. 10)

granted in part, and this matter is remanded for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: July 31, 2018
      Rochester, New York